## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DINA GALLOWAY,                          Case No. 1:11-cv-556
    Plaintiff,                          Beckwith, J.
                                        Litkovitz, M.J.

    vs

COMMISSIONER OF                         **REPORT AND**
SOCIAL SECURITY,                        **RECOMMENDATION**
    Defendant.

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications

for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is

before the Court on plaintiff's Statement of Errors (Doc. 11), the Commissioner's response in

opposition (Doc. 14), and plaintiff's reply memorandum. (Doc. 15).

### I. Procedural Background

Plaintiff filed applications for DIB and SSI in November 2007, alleging disability since

June 30, 2006, due to sickle cell disease, depression, chronic irritable bowel syndrome, kidney

failure, and gross hematuria. Plaintiff's applications were denied initially and upon

reconsideration. Plaintiff, through counsel, requested and was granted a de novo hearing before

Administrative Law Judge (ALJ) Christopher B. McNeil. Plaintiff, a medical expert (ME), and a

vocational expert (VE) appeared and testified at the ALJ hearing. On June 22, 2010, the ALJ

issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by

the Appeals Council was denied, making the decision of the ALJ the final administrative

decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the

sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir.
2004). Once the claimant establishes a prima facie case by showing an inability to perform the
relevant previous employment, the burden shifts to the Commissioner to show that the claimant
can perform other substantial gainful employment and that such employment exists in the
national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir.
1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act
> through December 31, 2011.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since June 30,
> 2006, the alleged onset date (20 C.F.R. 404.1571 *et seq.,* and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: sickle cell trait; pain
> disorder; irritable bowel syndrome; hematuria; degenerative disc disease;
> rhabdomyolysis; diffuse myalgia and arthrolgia; fibromyalgia; IgM deficiency
> resulting in recurrent candidal infections; depression; somatoform disorder (20
> C.F.R. 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that
> meets or medically equals one of the listed impairments in 20 C.F.R. Part 404,
> Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d),
> 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that [plaintiff]
> has the residual functional capacity to perform the following: lift no more than
> fifty pounds occasionally and no more than twenty-five pounds frequently; push
> or pull no more than twenty-five pounds using hand or foot controls; sit, stand,
> and walk approximately six hours each in an eight hour workday; occasionally
> crawl and use ladders, ropes, or scaffolds; frequently kneel, crouch, and use ramps
> or stairs; understand, remember, and carry out no more than simple one and two
> step tasks where there are no high production demands; no more than superficial
> contact with the public, coworkers, and supervisors.

6. The [plaintiff] is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).[1]

7. The [plaintiff] was born [in]... 1960 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. Since attaining age 50, [plaintiff] has been classified as an "individual closely approaching advanced age" for Social Security purposes (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from June 30, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-24).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*,

478 F.3d 742, 745-46 (6th Cir. 2007).

---

[1] Plaintiff's past relevant work was as a collections clerk, customer service representative and secretary. (Tr. 22, 244).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). *See also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545–46 (6th Cir. 2004) (reversal required even though ALJ' s decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff argues that: (1) the ALJ erred in finding that plaintiff's immunoglobulin (IgA and IgM) deficiencies do not meet the requirements of Listing 14.07; (2) the ALJ improperly weighed the medical opinion evidence; and (3) the ALJ erred in discounting plaintiff's credibility.

1. The ALJ did not err in finding that plaintiff's immunoglobulin deficiencies did not meet or equal Listing 14.07.

Plaintiff contends the ALJ erred in failing to find that she met or equaled Listing 14.07C as a result of her immunoglobulin deficiencies. For the following reasons, the undersigned finds the ALJ's determination to be substantially supported by the record evidence.

Listing 14.07 pertains to immunoglobulin deficiency disorders, excluding HIV infection, and provides in pertinent part that to meet or equal the Listing, the impairment must result in:

> C. Repeated manifestations of an immune deficiency disorder, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living.
>
> 2. Limitation in maintaining social functioning.
>
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. Thus, to satisfy the "paragraph C" criteria, plaintiff must demonstrate that her immune disorder results in two constitutional symptoms or signs[2] *and* one of the following: marked limitation of activities of daily living; marked limitation in maintaining social functioning; or marked limitation in timely completing tasks due to deficiencies in concentration, persistence, or pace. A marked limitation means more than moderate but less than extreme.

The ALJ determined that plaintiff's immunoglobulin deficiency disorder does not meet or medically equal the criteria of Listing 14.07C because "the objective evidence of record does not supporting (sic) findings of marked limitations in activities of daily living, social functioning, or

---

[2] Plaintiff's assignment of error is limited to the ALJ's determination that she did not meet or medically equal the criteria of Listing 14.07C(1), (2), or (3).

concentration, persistence, or pace." (Tr. 17). The ALJ found that the objective and opinion evidence of record supporting a finding that plaintiff had no more than moderate limitations in these functional criteria. (Tr. 15-16).

Plaintiff asserts the ALJ erred in this determination because there is objective evidence supporting a finding that plaintiff has marked limitations in social functioning and in her ability to complete tasks in a timely manner due to problems with concentration, persistence, or pace. (Doc. 11 at 15-16). In support, plaintiff identifies statements she made in reports completed for disability purposes describing her "isolation from others, very poor ability to complete tasks, low activity levels, and pervasive problems with attention and concentration." *Id.* at 16, citing Tr. 242-51 (in December 2007 plaintiff reported difficulty getting along with others, concentrating, and completing tasks); Tr. 259-62 (in a December 2007 Function Report plaintiff reported that she can't concentrate or focus and had been terminated for her inability to work with a previous supervisor); Tr. 273, 275 (plaintiff reported in February 2008 that her impairments limit her ability to take care of her personal hygiene and her ability to maintain focus); Tr. 278-81 (in a March 2008 Symptoms Report plaintiff reported experiencing delayed thought process and concentration and focus problems); Tr. 282-89 (plaintiff reported similar concentration and focus problems in a March 2008 Function Report); Tr. 297-303 (in May 2008 plaintiff reported that her depression limited her will to take care of her personal needs). Plaintiff also cites to consistent statements made by her mother in a Third Party Function Report. *Id.*, citing Tr. 230-37 (plaintiff's mother reported that plaintiff rarely cooks or cleans, that plaintiff requires assistance with personal grooming and has given up shaving her legs, that plaintiff complains of lack of focus, and does not get alone with most people). Lastly, plaintiff notes that her testimony at the

ALJ hearing is consistent with the above reports. *Id.*, citing Tr. 66-68, 71, 73 (plaintiff testified that she does not want to be around others due to embarrassment from odor associated with frequent vaginal infections and daily diarrhea, does not socialize and is unable to maintain friendships due to her various impairments, and is unable to do household chores due to fatigue). Plaintiff contends that these subjective reports support a finding that she has marked limitations in her social functioning and task completion abilities.

Plaintiff also asserts that the objective evidence of record demonstrates that she meets or equals Listing 14.07. Specifically, plaintiff contends that the opinion of one-time examining psychologist, Nicole A. Leisgang, Psy.D., supports a finding that plaintiff has marked limitations which satisfy the Listing 14.07 criteria. Dr. Leisgang evaluated plaintiff in October 2007 on behalf of the BARIS program.[3] (Tr. 431-36). Plaintiff reported that her sleep and appetite were poor, with limited energy and easy fatigability. (Tr. 431). Plaintiff also noted she spent most of her time in bed and has few friends, but has daily contact with them. (Tr. 433). Dr. Leisgang reported that plaintiff was cooperative, but she appeared anxious and depressed. (Tr. 432). Plaintiff's conversation was slow at times and she was slow to respond to questions. *Id.* Dr. Leisgang found plaintiff's thought content was normal and receptive language skills were adequate; her short-term memory was only marginally adequate; her attention and concentration skills were limited; and her arithmetic reasoning abilities were only marginally adequate. *Id.* Dr. Leisgang noted that plaintiff was preoccupied with her difficulties and that her physical complaints could be indicative of somatization. (Tr. 432). IQ testing revealed a verbal IQ score

---

[3] The Freestore Foodbank's Benefits Acquisition Results in Self Sufficiency (BARIS) project in Hamilton County is a project funded through the Ohio Department of Job & Family Services limited to serving individuals seeking supplemental security income benefits and provides case management services that include consultative examinations. *See* www.odjfs.state.oh.us, www.fsfbmedia.org and O.R.C. 5101:9-6-07.2 [rescinded] effective

of 76, a performance IQ of 63, and a full scale IQ score of 67. (Tr. 434). Plaintiff's level of

intelligence was estimated to be in the low-average range. Dr. Leisgang diagnosed major

depressive disorder, recurrent, severe, without psychotic features and panic disorder without

agoraphobia. (Tr. 435-36). She assigned plaintiff a Global Assessment of Functioning ("GAF")

score of 45.[4] (Tr. 436). Dr. Leisgang opined that plaintiff was moderately impaired in her ability

to relate to others; in her ability to understand, remember and follow simple instructions; and in

her ability to maintain attention and concentration. *Id.* She concluded that plaintiff was

moderately to seriously impaired in her ability to withstand the stress and pressure of day to day

work activity. *Id.*

Plaintiff further cites to other purported objective evidence which she claims supports a

determination that she has a "marked" limitation in the Listing 14.07 functional criteria. Plaintiff

contends that treatment notes from Steven S. Wunder, M.D., a one-time examining physician,

support Dr. Leisgang's limitations. Specifically, plaintiff identifies Dr. Wunder's notations that

when her symptoms are bad she has difficulty with physical activity and "[s]he is independent

with activities of daily living such as bathing, dressing and personal hygiene but is just slow with

it." (Tr. 438). Plaintiff also cites to observations made by a consulting psychiatrist, R. Gregory

Rohs, M.D., in April 2008 who noted plaintiff's reports of depression and observed that she was

tearful with a depressed mood and corresponding affect. (Doc. 11 at 17, citing Tr. 421). Dr.

---

01/20/2012.

[4] A GAF score represents "the clinician's judgment of the individual's overall level of functioning."
American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev.
2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social,
and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of
severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with
clear expectation of death). *Id.* at 34. Individuals with scores of 41 to 50 are classified as having "serious symptoms
or serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)...." *See
Id.* at 32.

Rohs diagnosed plaintiff with depressive disorder, NOS but noted that she was not interested in treatment with antidepressants "because she believes her mood would be better if she had a more certain medical diagnosis . . . ." (Tr. 421). Lastly, plaintiff asserts that observations from medical providers at Good Samaritan Hospital support a finding of "marked" limitations in social functioning and activities of daily living. (Doc. 11 at 17-18, citing Tr. 357, 361) (in March 2007 plaintiff reported to the hospital for follow-up treatment and reported a decreased activity level and being "very stressed"). The undersigned finds that despite this evidence, plaintiff has not met her burden of establishing that she meets or equals Listing 14.07C and that the ALJ's decision is substantially supported.

First, aside from Dr. Leisgang's opinion and the consulting psychiatrist's observation that plaintiff was tearful when discussing her medical impairments, the evidence cited by plaintiff in support of a finding of a "marked" limitation consists entirely of her subjective statements of lack of focus, difficulty concentrating, and problems with social functioning and personal care. Although plaintiff frames these statements as observations and clinical findings, a review of the cited evidence contradicts this assertion. For example, plaintiff contends that Dr. Wunder "reported" that she is slow with activities of daily living and has certain physical restrictions, yet review of the record reveals that these "reports" were plaintiff's subjective statements to Dr. Wunder whose findings were that plaintiff was "a well-developed, well-nourished female in no acute distress; had a non-antalgic gait; diminished walking due to complaints of right leg weakness; she could not squat and arise; had limited lumbar flexion and lateral bending; had normal and symmetric reflexes but decreased motor strength in her right leg to grade 4/5; positive straight leg right, negative left; normal range of motion in the hips, knees, ankle, cervical

10

spine, shoulders, elbows, wrists, and fingers; and had normal upper extremity motor, sensory, and reflexes." (Tr. 438-39). Contrary to plaintiff's assertion, Dr. Wunder made no observations and expressed no opinion as to whether plaintiff had any limitations in activities of daily living, social functioning, or maintaining concentration, persistence, or pace.[5] As such, the ALJ reasonably noted that "the weight of [plaintiff]'s argument is based upon her subjective complaints and not objective signs and findings." (Tr. 17).

Insofar as plaintiff contends her subjective statements suffice to support a finding that she meets or medically equals Listing 14.07C, this argument is not well-taken. As discussed in connection with plaintiff's third assignment of error, the ALJ's decision to discount plaintiff's statements to the extent they are inconsistent with his finding of "moderate" limitations is substantially supported by the evidence of record.

Second, the objective evidence cited by plaintiff, namely Dr. Leisgang's finding of a "moderate to serious" limitation in withstanding daily work stress, was properly discounted by the ALJ. The ALJ discounted Dr. Leisgang's opinion based, in part, on the ME's testimony that the record lacked evidence supporting a "serious" stress limitation.[6] (Tr. 16, citing Tr. 60). At the ALJ hearing, the ME testified that he had reviewed the case and all of the medical records in the case file, including plaintiff's most recent 2010 records. (Tr. 51-52). Regarding Dr. Leisgang, the ME testified that he reviewed her report and noted there were no accompanying treatment records or other psychiatric or psychological records in the file aside from opinions of state agency reviewing psychologists. (Tr. 51-52). The ME stated that he did not see any

---

[5] Dr. Wunder's opinion as to plaintiff's physical limitations are addressed *infra* in connection with plaintiff's second assignment of error.

[6] The ALJ's determination to discount Dr. Leisgang's opinion is discussed more thoroughly in connection with plaintiff's argument that the ALJ erred in weighing the medical opinions of record.

11

evidence of record supporting her finding of a "serious" limitation, but that her opinion that

plaintiff had "moderate" limitations was supported. (Tr. 60). Notably, Dr. Leisgang opined that

plaintiff had only "moderate" limitations in social functioning and maintaining attention,

concentration, persistence and pace, and she expressed no opinion on whether plaintiff was

functionally limited in her activities of daily living. (Tr. 436).    Further, the ME testified that the

limitations provided by nonexamining state agency psychiatrist, Karla Voyten, Ph.D., (Tr. 501-

519) were consistent with the objective medical evidence of record and were reasonable. (Tr. 52-

53). As the ME was the only mental health professional whose opinion was provided based on a

review of plaintiff's entire medical file, the ALJ reasonably adopted his opinion that Dr.

Leisgang's finding of a "serious" limitation was unsupported by the record evidence. *See* Social

Security Ruling 96-6p, 1996 WL 374180, at *3 (noting appropriateness of giving greater weight

to opinions based on review of a complete medical record).[7]

　　　Plaintiff also asserts the ALJ mischaracterized the evidence of record regarding plaintiff's

social functioning when discussing Dr. Leisgang's notation that plaintiff has regular contact with

her friends.  In her psychiatric review, Dr. Leisgang noted that plaintiff stated that she "leaves her

home regularly and visits her few friends including her estranged husband" and "has few friends

but has daily contact with them." (Tr. 433-34).  In assessing plaintiff's credibility, the ALJ stated

that her allegations of having no friends and never socializing were contradicted by her "reports

to Dr. Leisgang that she leaves her home regularly and visits with a few friends, including her

---

[7]"Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the
Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and
interpretations' adopted by the Commissioner. 20 C.F.R. § 402.35(b)(1).  In *Wilson*, 378 F.3d at 549, the court
refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same was as Social
Security Regulations, but *assumed* that they are. [The Court] makes the same assumption in this case." *Ferguson v.
Comm'r of Soc. Sec.*, 627 F.3d 269, 272 n.1 (6th Cir. 2010) (emphasis in original).

estranged husband." (Tr. 16, citing Tr. 433-34). The undersigned finds that the ALJ's recitation

of Dr. Leisgang's report is not only a proper characterization of plaintiff's statements, but that it

is a verbatim recitation thereof. Plaintiff argues that while she had friends in 2007 when she

spoke with Dr. Leisgang, she might have lost these friendships by 2010 at the time of the ALJ

hearing. This argument is not only highly speculative, it is an appeal to probability. It does not

follow that the mere passage of time results in the loss of friendships; further, it is just as likely

that one would gain friendships over time. Nevertheless, plaintiff's argument misses the mark as

the ALJ properly characterized Dr. Leisgang's observations and plaintiff's statements therein.

The undersigned further notes there is no medical opinion of record whatsoever that plaintiff has

a "marked limitation" in social functioning.

The ALJ's determination that plaintiff has only "moderate" limitations in the Listing

14.07C criteria is otherwise substantially supported. In reaching this conclusion, the ALJ relied

on the opinion evidence of record from Dr. Leisgang, Dr. Voyten, and Dr. Schwartz. The ALJ

noted that Dr. Leisgang's finding of a "serious" limitation was inconsistent with the other

opinion evidence, and that Dr. Schwartz explicitly testified after a review of the entire case file

(which includes three years of records following Dr. Leisgang's one time evaluation) that the

medical evidence supported no more than "moderate" limitations.

The ALJ's decision reflects a thorough review of the record and substantial evidence

supports his conclusion that plaintiff does not meet or medically equal Listing 14.07C.

Accordingly, the ALJ's finding should be upheld.

2. The ALJ did not err in weighing the medical opinion evidence.

For her second assignment of error, plaintiff contends the ALJ erred by giving "great

13

weight" to the opinions of the the state agency reviewing doctors and the ME, while giving only "some weight" and "little weight" to the opinions of the examining doctors.

The applicable regulations lay out the three types of acceptable medical sources upon whom an ALJ may rely: treating source, nontreating source, and nonexamining source. 20 CFR §§ 404.1502, 416.902. When treating sources offer opinions, the Social Security Administration is to give such opinions the most weight and is procedurally required to "give good reason in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). This requirement only applies to treating sources. *Id.* at 876. "With regard to nontreating, but examining, sources, the agency will simply generally give more weight to the opinion of a source who has examined the claimant than to the opinion of a source who has not examined him." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(1)) (internal citations omitted).[8] The ALJ must consider the following factors in determining how much weight to afford the opinion of a nontreating source: the length and nature of the treatment relationship, the evidence that the physician offered in support of his opinion, the consistency of the opinion with the record as a whole, and whether the physician was practicing a specialty. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Ealy*, 594 F.3d at 514.

In terms of her mental impairments, plaintiff argues that the ALJ erred by giving "great weight" to the opinions of Dr. Schwartz, the ME, and Dr. Voyten, the state agency reviewing psychologist, while assigning only "some weight" to the opinions of one-time examining

---

[8]20 C.F.R. §§ 404.1527 and 416.927 were amended effective March 26, 2012. The provisions governing the weight to be afforded a medical opinion were previously found at §§ 404.1527(d) and 416.927(d) and are now found at §§ 404.1527(c) and 416.927(c).

psychologist Dr. Leisgang. Plaintiff contends the ALJ failed to support his conclusion that the opinion of Dr. Leisgang was contradicted by other evidence of record. Plaintiff's argument is not well-taken as a review of the record demonstrates that the ALJ properly considered the medical opinion evidence of record in accordance with 20 C.F.R. §§ 404.1527(c) and 416.927(c).

As noted above, Dr. Leisgang evaluated plaintiff in October 2007 and opined that plaintiff was moderately impaired in her ability to relate to others; in her ability to understand, remember and follow simple instructions; and in her ability to maintain attention and concentration; and moderately to seriously impaired in her ability to withstand the stress and pressure of day to day work activity. (Tr. 436). Plaintiff asserts the ALJ erred by not fully crediting Dr. Leisgang's opinion, particularly her determination that plaintiff is moderately to seriously impaired in her ability to withstand the stress of daily work activity, as Dr. Leisgang provided a detailed analysis of plaintiff's impairments and a narrative discussion explaining the basis for her opinion which is supported by the record evidence. Further, plaintiff contends the ALJ did not adequately support his decision to discount Dr. Leisgang's opinion by providing specific citations to the allegedly contradicting evidence.

The ALJ gave "some weight" to Dr. Leisgang's opinion and adopted her findings that plaintiff had moderate limitations in social functioning, the ability to understand and follow simple instructions, and to maintain concentration and attention. (Tr. 16). In rejecting Dr. Leisgang's opinion that plaintiff is "moderately to seriously" impaired in her ability to withstand work stress, the ALJ stated that "there is no evidence to support 'serious' stress limitation . . . [and] the medical evidence of record and the [plaintiff]'s activities of daily living support no more than moderate limitations." *Id*. While this paragraph of the ALJ's decision does not

15

include specific citations to the evidence relied upon, a review of the decision as a whole demonstrates that the ALJ adequately referenced and discussed the evidence supporting his determination. Specifically, the ALJ noted that Dr. Schwartz testified that Dr. Leisgang's finding of a serious limitation was not supported by the record evidence. (Tr. 16, citing Tr. 60). Though plaintiff asserts Dr. Schwartz did not sufficiently explain the rationale supporting his opinion, he was not asked to provide further elaboration. Rather, instead of exploring on cross examination what specific findings or evidence Dr. Schwartz would expect to observe in support of a finding of "serious" limitations, plaintiff's counsel declined to ask further questions after Dr. Scwartz testified that he did not believe Dr. Leisgang's prescribed limitation was supported. (Tr. 59-61).

As Dr. Schwartz had an opportunity to review the entirety of plaintiff's medical record, the ALJ's determination to credit his finding over that of a one-time examining psychologist is appropriate. *See* Tr. 51-52 (Dr. Schwartz testified that he reviewed all of plaintiff's medical records prior to offering his opinion). *See also* SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources . . . if the State agency medical . . . consultant's opinion is based on a review of a complete case record . . . .); *Helm v. Comm'r of Soc. Sec.*, 405 F. App's 997, 1002 (6th Cir. 2011). The ALJ also noted that the opinion of nonexamining psychiatrist Dr. Voyten supported a finding of no more than moderate limitations, contrary to Dr. Leisgang's findings. *See* Tr. 16, citing Tr. 501-19. Notably, Dr. Voyten opined that Dr. Leisgang's "opinion of a moderate to marked impairment in stress tolerance [was] not supported" due to plaintiff's lack of any severe mental health treatment. (Tr. 503). Indeed, plaintiff has not directed the Court's attention to any

medical opinion evidence subsequent to Dr. Leisgang's October 2007 report demonstrating plaintiff was more than moderately impaired in her ability to withstand work stress.[9]

The ALJ is the ultimate decision-maker regarding plaintiff's residual functional capacity (RFC) and must consider the opinions of medical sources and other relevant evidence. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c), 404.1545, 416.945. In this case, the ALJ was presented with two consistent medical opinions from Dr. Schwartz and Dr. Voyten and one inconsistent opinion from Dr. Leisgang. In determining that plaintiff had no more than moderate limitations, the ALJ took into consideration the record as a whole, and determined that Dr. Schwartz's opinion, based on a review of the entire case record, including Dr. Leisgang's examination and Dr. Voyten's mental RFC assessment, supported a finding that Dr. Leisgang's opinion that plaintiff had a "moderate to serious" limitation was inconsistent with the record evidence as a whole. As Dr. Leisgang's opinion was contradicted by the majority of the medical opinions regarding plaintiff's mental limitations, the ALJ's decision to discount it is substantially supported. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) (holding that an ALJ's finding that a medical opinion conflicts with other evidence in the record is a sufficient reason to discount the opinion). Further, the ALJ adequately explained his decision by referencing specific supporting evidence, indicating that he complied with the applicable regulations in weighing the opinions of Dr. Leisgang, Dr. Schwartz, and Dr. Voyten.[10] The Court now turns to plaintiff's argument concerning the weight afforded to the medical opinions of record on her physical impairments.

---

[9] There is no question that plaintiff has a "severe" mental impairment, *see* Tr. 464-66, 469, 478, 620-21, 625, 673, 777, but in the absence of any additional evidence the ALJ's finding of no more than "moderate" limitations based on the opinions of Dr. Schwartz and Dr. Voyten was not unreasonable.

[10] The undersigned notes that Dr. Leisgang's opinion that plaintiff has "moderate to serious" impairments in her ability to withstand the stress of daily work does not necessarily equate to an opinion that plaintiff has a "marked" limitation in the Listing 14.07C criteria.

Plaintiff argues the ALJ erred by giving only "little weight" to the opinion of Dr. Wunder, a one-time examining physician, who opined that plaintiff is limited to sedentary work while giving "great weight" to the opinion of the nonexamining state agency physician, Dr. Starr. Dr. Wunder examined plaintiff on October 10, 2007 on behalf of the BARIS program. (Tr. 437-40). Plaintiff presented with the chief complaint of a chronic pain disorder with a history of sickle cell trait and reported pain in her back, legs, and flank and chronic irritable bowel-type symptoms. (Tr. 437-38). On examination, plaintiff had a non-antalgic gait, with diminished ability to tandem walk, pain and weakness with standing on her heels and toes and with squatting and arising, tenderness to palpation over her thigh, decreased strength in her right leg to 4/5, and positive straight leg raise on the right at forty-five degrees. (Tr. 439). Dr. Wunder diagnosed sickle cell trait, episodic rhabdomyolysis[11] with intermittent renal failure, hematuria, lumbar degenerative disc disease, and irritable bowel syndrome with constipation. (Tr. 440). Dr. Wunder opined that plaintiff's impairments would allow only for sedentary-type occupations and she would not be able to squat, kneel, crawl, or repetitively bend at the waist. *Id.*

Dr. Starr reviewed plaintiff's medical records and completed an RFC assessment in February 2008. (Tr. 520-27). He opined that plaintiff could lift, carry, push and pull 50 pounds occasionally and twenty five pounds frequently; sit about six hours in an eight hour workday; and stand/walk about six hours in an eight hour workday. (Tr. 521). Dr. Starr also found that plaintiff could frequently climb ramps and stairs but only occasionally climb ladders, ropes or scaffolds. (Tr. 522). Plaintiff could frequently kneel and crouch but only occasionally crawl. *Id.*

---

[11]"Rhabdomyolysis is the breakdown of muscle fibers that leads to the release of muscle fiber contents (myoglobin) into the bloodstream. Myoglobin is harmful to the kidney and often causes kidney damage." *See* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001505/ (last visited February 7, 2013).

Dr. Starr found that plaintiff's "allegations of effort on function are not supported to the degree alleged" and she was only partially credible. (Tr. 525). Esberdado Villanueva, M.D., affirmed Dr. Starr's assessment in April 2008. (Tr. 576).

In support of his determination to give "little weight" to Dr. Wunder's opinion, the ALJ stated that Dr. Wunder's conclusions that plaintiff is limited to sedentary work and is unable to squat, kneel, crawl, or bend repeatedly at the waist were unsupported by the objective medical evidence of record, including the objective signs and findings from Dr. Wunder's examination. (Tr. 19). The ALJ's decision is supported by substantial evidence. Aside from findings of an inability to squat and rise, tenderness to palpation of the thigh muscles, and a slightly diminished range of lumbar flexion motion and lateral bending, there are no clinical or objective findings in Dr. Wunder's report that support a sedentary work limitation. *See* Tr. 438-39. The only explanation given by Dr. Wunder for his opinion is that plaintiff has a documented history of rhabdomyolysis and has residual weakness in the right leg. (Tr. 440). It is unclear how right leg weakness, in light of findings that plaintiff had 4/5 strength in her right leg and normal strength in her left leg, supports a finding that plaintiff is limited to sedentary work. (Tr. 439-40). As noted by the ALJ, Dr. Wunder's findings and other evidence of record contradict this opinion. *See* Tr. 377-79 (in March 2007, emergency room doctors found no definitive weakness in plaintiff's legs and noted that she was walking well and had reasonable strength in her legs); Tr. 418, 464-69 (in April 2007, emergency room treatment records show that plaintiff had severely decreased deep tendon reflexes in the right leg with hyperesthesia in the right lower leg and diminished muscle strength in both legs; however, from May 2007 to December 2007, plaintiff's

treating physician noted normal neurological examination findings, full range of motion, and normal strength).

The Court acknowledges that the record includes objective findings which support plaintiff's claims of leg and foot pain. *See* Tr. 765-67 (an MRI taken of plaintiff's right foot on April 24, 2009, revealed a small Morton's neuroma at 2nd interspace, hallux sesamoid arthropathy and sesamoiditis, prominent callus, low grade strain and atrophy of the plantar interosseous musculature laterally, and mild tenosynovitis, and an MRI of plaintiff's left foot taken that same day revealed Hallux sesamoid arthropathy, sesamoiditis and a mildly fragmented sesamoid, a small foci of perineural fibrosis in the 2nd and 3rd interspaces, a prominent callus along the plantar aspect, and a pseudolipoma of the plantar aspect of the foot).  Nevertheless, the ALJ thoroughly addressed this evidence (*see* Tr. 16) and reasonably determined that plaintiff's foot impairments were not severe. [12]  Moreover, the post-MRI evidence demonstrates that the ALJ reasonably discounted Dr. Wunder's opinion.  In September 2009, Colin Zadikoff, M.D., a neurologist, examined plaintiff for complaints of foot and leg pain and found plaintiff's strength was equal and normal bilaterally, muscle tone was normal, reflexes were normal, sensory examination was unremarkable, and gait was normal, and there was no Romberg's sign.  (Tr. 658-59).  Further, an examination in January 2010 was "grossly normal without focal deficits" and included findings of normal muscle tone and coordination, no edema or tenderness upon musculoskeletal examination, and no cervical adenopathy.  (Tr. 672-73).  While physical therapy notes include findings of decreased strength, range of motion, and flexibility, the therapist noted that plaintiff was not meeting any goals and not doing the exercises as assigned.  (Tr. 755, 757).

---

[12] Plaintiff does not argue that the ALJ erred in determining that plaintiff's foot-related impairments were nonsevere.

Review of the ALJ's decision reflects that he considered the record evidence as a whole and in addressing the conflicting opinion evidence, reasonably determined that Dr. Wunder's opinion was contradicted by various objective and clinical findings and deserved "little weight," whereas Dr. Starr's opinion was consistent with these findings and deserved "great weight." The ALJ's decision to discount Dr. Wunder's opinion based on the conflicting opinion and clinical evidence of record is substantially supported and is a valid basis for discounting the opinion. *See White*, 572 F.3d at 286. While the record could conceivably support a contrary finding, the Social Security Act does not permit the reviewing court to resolve conflicts in the evidence. *Cutlip v. Sec'y of H.H.S.*, 25 F.3d 284, 286 (6th Cir. 1994). The Court's review is limited to determining whether substantial evidence supports the ALJ's conclusion. Here, the ALJ complied with the regulations for evaluating opinion evidence and his determination to give "little weight" to Dr. Wunder's opinion is substantially supported.

Accordingly, the undersigned finds that the ALJ did not err in weighing the opinion evidence of record and plaintiff's second assignment of error should be overruled.

3. The ALJ did not err in discounting plaintiff's credibility.

For her final assignment of error, plaintiff contends the ALJ erred in discounting her credibility. Plaintiff asserts (1) the ALJ erred when he stated that there was no imaging of record which supported an orthopedic condition that could be expected to produce the pain plaintiff describes (Tr. 22), and (2) the ALJ erred by using boilerplate language in finding her statements to be "less than fully credible" in contravention of the ALJ's duty to provide specific reasons for his credibility finding. (Doc. 11 at 25). Consequently, plaintiff requests that the ALJ's credibility determination be reversed.

21

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers*, 486 F.3d at 247 (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk,* 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec'y of H.H.S.,* 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

The ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers,* 486 F.3d at 247. Rather, such determination must find support in the record. *Id.* Whenever a claimant's complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

Substantial evidence supports the ALJ's determination that plaintiff's subjective statements regarding the severity of her impairments are not credible to the extent they are inconsistent with his finding that she is capable of performing a limited range of work. In

making this determination, the ALJ noted throughout his decision the various ways in which plaintiff's statements were inconsistent and unsupported by the objective and clinical evidence of record.

First, the ALJ identified plaintiff's inconsistent reports of social functioning, citing a December 2007 Function Report in which plaintiff stated she tried to leave her home every day; a March 2008 Function Report in which plaintiff reported that she does not socialize and only sees her family members because "they are around," but does not leave her house except to go to medical appointments; and her reports to Dr. Leisgang in October 2007 that she regularly leaves home to visit with friends and her husband. *See* Tr. 16, 19, 22, citing Tr. 259, 281, 433. The record also supports the ALJ's finding that plaintiff's statements regarding activities of daily living were inconsistent. *Compare* Tr. 231 (plaintiff's mother reported that plaintiff needs assistance in personal grooming and dressing) *with* Tr. 284 (plaintiff reported that she requires extra time to dress herself and complained of pain associated with bathing) *and* Tr. 438 (Dr. Wunder noted that plaintiff is "independent with activities of daily living such as bathing, dressing and personal hygiene but is just slow with it."). The ALJ also discussed plaintiff's inconsistent statements regarding her depression. *See* Tr. 15, citing Tr. 421 and Tr. 466 (in April 2007 plaintiff stated that her depression was primarily related to her medical impairments, while in October 2007 she stated that her depression was due to family problems).

Second, the ALJ addressed the many notations from medical providers regarding plaintiff's noncompliance with treatment recommendations. *See* Tr. 13, citing Tr. 458 (noting plaintiff's noncompliance with doctor's orders to take folic acid and refusal to take pain medication despite "taking an occasional Darvocet from her mother"); Tr. 14, citing Tr. 664

23

(plaintiff refused social and vocational services claiming that "she has too many things going on")[13]; Tr. 14, citing Tr. 944 (plaintiff went for follow-up treatment regarding claims of diffuse foot pain and was noted as doing well with foot discomfort despite not wearing prescribed orthotics; plaintiff was advised to return the orthotics for refurbishing due to claims of discomfort).

Third, the ALJ identified various objective and clinical findings which were inconsistent with plaintiff's reports of pain and the severity of her symptoms. *See* Tr. 13, citing Tr. 377-78 (plaintiff went to the emergency room complaining of leg pain and weakness, but treating doctors found reasonable strength in all extremities, found no "definitive weakness," and plaintiff was stable at discharge and walking well); Tr. 14, citing Tr. 464-500, Tr. 656-59 (noting that although plaintiff has consistent complaints of back and muscular pain, examinations from her treating physician, Lev Gelman, M.D., and examiner Colin Zadikoff, M.D., include normal neurological exams, full range of motion in all extremities, normal pulses, equal and normal bilateral strength, normal muscle tone and reflexes, and unremarkable sensory examination). The ALJ also noted that plaintiff's treating source at the Ohio GI & Liver Institute opined that her symptoms could be a "somatization type of syndrome," although plaintiff disagreed with this assessment. (Tr. 15, citing Tr. 907).

The ALJ's credibility determination should be affirmed where he considers the plaintiff's subjective complaints in light of the record as a whole and adequately explains his decision to not fully credit the plaintiff's alleged limitations with citations to the record. *See Infantado v. Astrue*, 263 F. App'x 469, 476 (6th Cir. 2008). Here, the ALJ considered plaintiff's allegations in the

---

[13] The undersigned notes that this further supports the ALJ's finding that plaintiff's activities of daily living are inconsistent with her subjective complaints.

context of the complete record.  The ALJ cited to objective and clinical evidence, doctors'
reports of plaintiff's noncompliance, and plaintiff's inconsistent statements in support of his
finding that plaintiff's subjective allegations were not credible to the extent they contradicted his
finding that she was able to perform a limited range of work.  The ALJ adequately explained his
credibility determination and supported his finding with citations to the record evidence such that
it is substantially supported.

Plaintiff argues that the ALJ's statement that "there is no imaging which shows an
orthopedic condition that could reasonably be expected to produce pain of the frequency,
severity, and duration that the [plaintiff] has described" (Tr. 22) misstates the record evidence.
Plaintiff identifies evidence of a March 2007 lumbar MRI revealing a disc bulge and protrusion
on the left L5 nerve root (Tr. 487-88) and MRIs of her feet demonstrating hallux sesamoid
arthropathy, Morton's neuroma, prominent calluses, tenosynovitis, and atrophy of the plantar
interosseous musculature.  (Tr. 756-67).  Plaintiff argues that the existence of this imaging
evidence, as well as plaintiff's history of rhabdomyolysis, contravenes the ALJ's finding and
supports plaintiff's complaints of bilateral pain.  The undersigned disagrees.  While the evidence
cited by plaintiff could support her claims of bilateral leg pain, there is no medical opinion
evidence of record stating that these conditions create functional limitations greater than those set
forth in plaintiff's RFC.  Further, even if the ALJ erroneously characterized this evidence, such
an error was harmless as the undersigned has already found substantial evidence to support the
ALJ's credibility finding.  *See Ritter v. Astrue*, No. 4:09cv2460, 2011 WL 1257825, at *7 (N.D.
Ohio Mar. 31, 2011) (ALJ's misconstruction of evidence discussed in making credibility finding
is harmless error where adequate evidence supports the credibility determination).

Plaintiff further argues that the ALJ's use of boilerplate language in making his credibility determination contravenes the requirements of Social Security Ruling 96-7p, which governs the manner in which credibility determinations are to be made. *See* SSR 96-7p, 1996 WL 374186 (July 2, 1996). In support of this argument, plaintiff cites to an unreported Eastern District of Kentucky case, *Dauwe v. Astrue*, No. 2:10-cv-83 (E.D. Ky. Oct. 29, 2010), where the court reversed an ALJ's credibility determination pursuant to SSR 96-7 for the ALJ's failure to cite to any evidence in support, aside from stating there was insufficient objective medical evidence supporting plaintiff's claims. *See* SSR 96-7p, 1996 WL 374186, at *1 ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.").

The ALJ in *Dauwe* found that the plaintiff's statements as to the intensity of her symptoms were "not credible to the extent they are inconsistent with the above residual functioning capacity assessment[,]" and provided no further elaboration. *Dauwe*, Docket No. 15 at 7. The ALJ's decision was overturned, not for the use of boilerplate language, but because the decision was fundamentally flawed as the ALJ, *inter alia*, failed to provide any explanation for discounting the plaintiff's credibility aside from citing to a lack of supporting objective evidence which is prohibited by SSR 96-7p. *Id.* at 7-8. In the instant case, however, the ALJ included a thorough discussion of plaintiff's statements and cited to specific evidence in finding that her statements were not credible to the extent they were inconsistent with his determination that she was capable of a limited range of work. *See, e.g.*, Tr. 13, citing Tr. 451-53 (noting that plaintiff asserted that she was undergoing sickle cell crisis post-alleged onset date but that plaintiff's

26

treating physician noted that she had no crisis in December 2007 and that plaintiff required only conservative treatment); Tr. 14, citing Tr. 669 (identifying that plaintiff was noncompliant with recommended treatment); Tr. 16, citing Tr. 435 (noting that plaintiff's allegations that she does not leave home due to embarrassment over symptoms are inconsistent with her statements to Dr. Leisgang that she regularly leaves home to visit friends and family). As the ALJ included specific citations to the evidence upon which he relied in making his credibility determination, the undersigned finds that the ALJ's use of boilerplate language is not, standing alone, a valid basis for reversal.

In light of the above evidence considered by the ALJ, the inconsistencies between plaintiff's statements regarding her social functioning and activities of daily living, and the deference due to the ALJ in making credibility determinations, the undersigned concludes the ALJ's credibility finding is substantially supported by the record and should be affirmed.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: 2/19/2013

Karen L. Litkovitz
United States Magistrate Judge

27

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DINA GALLOWAY,                              Case No. 1:11-cv-556
    Plaintiff,                          Beckwith, J.
                                            Litkovitz, M.J.

    vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).